**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

JOSEPH L. MARSHALL,

      Plaintiff,

      v.                                      Case No.: 3:07-cv-371-RV-MD

REICHHOLD, INC.,

      Defendant.
_____/

**ORDER**

This employment discrimination case arises under Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e, *et seq*.] ("Title VII"), the Age Discrimination in Employment Act of 1967 [29 U.S.C. § 621, *et seq*.] ("AEDA"), and the Florida Civil Rights Act of 1992 [Fla. Stat. § 760.01, *et seq.*] ("FCRA"). Now pending is the defendant's motion for summary judgment (doc. 39).

**I. Background**

Unless otherwise noted, the following facts are undisputed.

The defendant is an international chemical company with plant locations throughout the United States, including one in Pensacola, Florida. It produces advanced polymers and polymer systems, resins for composite applications, and speciality resins, and it uses many different chemicals in the production process. These chemicals are expensive; subject to tight environmental regulations; and contain volatile substances which, if dealt with improperly, can cause explosions, flashes, or fires. Many of the products produced at the Pensacola plant are created under heat and pressure conditions inside a mixing and distilling chamber known as a reactor or kettle. The reactors are monitored by employees called operators.

The company has procedures that operators must follow in mixing product or

performing certain tasks, including following a "batch ticket," which is equivalent to a recipe. If the operator does not follow the batch ticket, the product is "off-spec" and will not meet quality standards. Sometimes a non-conforming product must be completely discarded and other times it may be salvaged by adding additional raw materials to bring it within product specifications. In either event, failure to follow the batch ticket will result in additional costs and, at times, disruption in product delivery schedules. Similarly, if an operator does not add the right amount of materials at the appropriate time, the batch may "gel" or become too thick or hard to pump out of the reactor. A gelled batch can lead to significant extra costs (in addition to lost production time) because the company must hire outside vendors to "waterblast" the material out of the reactor.

The plaintiff, Joseph L. Marshall, is a black male. In 1969, he was hired to work as an operator at the Pensacola plant, and he worked for the defendant for the next 36 years. During the course of his employment, the plaintiff had a very extensive disciplinary record. Prior to 2004, he played a role in numerous errors that at times cost the company significant money. *See generally* doc. 41 at 6-8 (detailing plaintiff's pre-2004 errors --- eleven between 1995 and 2003 --- and citing his deposition testimony wherein he acknowledged the errors). He received suspensions and probation for several of these mistakes.

Beginning in 2004, a collective bargaining agreement ("CBA") between the defendant and the United Steelworkers Union governed the employee/employer relationship at the Pensacola plant. The CBA contained a nondiscrimination clause and provided that all employees of the bargaining unit (which included the plaintiff) could file a grievance whenever and if they believed that the company had violated a provision of the agreement.

Also beginning in 2004, the defendant implemented a progressive disciplinary policy. Post-2004, it is undisputed that the plaintiff continued to make

serious mistakes warranting discipline. *See generally* doc. 41 at 8-13. Specifically, on August 26, 2004, he was suspended for three days for mischarging a chemical through a line that was already being used for another chemical. Although he claimed that this mistake was made only because another operator started using his line, the plaintiff acknowledged at deposition that it was his responsibility to watch the line to make sure that no one else was using it. In September 2005, he was suspended for failing to verify that a reactor was empty after loading product onto the truck. The following month, in October 2005, he improperly gelled chemical batches on two consecutive days, for which he was suspended five days.

The plaintiff does not dispute that he made the foregoing mistakes. Rather, as will be discussed further *infra*, he claims that there was favoritism towards white employees and that they were not punished as frequently and as severely for their mistakes. However, he did not file a grievance under the CBA and claim that his disciplinary scheme was being applied in a discriminatory fashion.[1] Instead, on or about October 11, 2005, he filed a charge of discrimination with Escambia-Pensacola Human Relations Commission. Three months later, on January 11, 2006, he failed to follow proper procedures in mixing a batch of chemicals, and the product he produced was "off-spec." This error cost his employer over $10,000, and resulted in two missed shipments to a customer in another country. This final mistake meant that he had five (5) mistakes in an 18-month period. Under the company's progressive discipline policy, this called for termination. The defendant did terminate him on January 13th. He was fifty-five (55) years old at the time of his discharge.

---

[1] The plaintiff claims that he did not file a grievance because he was not a dues-paying member of the union and "did not feel that he had union representation." Nevertheless, he was a member of the bargaining unit controlled by the CBA.

*Case No.: 3:07-cv-371-RV-MD*

The plaintiff filed a six count complaint against the defendant in state court, alleging race and age discrimination and retaliation under Title VII, AEDA, and FCRA. The defendant thereafter removed the case to this court and now moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## II. Applicable Law

### A. *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

However, summary judgment is inappropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact will be "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See id.* On summary judgment, the record evidence and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the non-moving party. *National Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003).

B. *Substantive Law*

Title VII, AEDA, and FCRA make it unlawful for an employer to discriminate against an employee on the basis of race or age. In addition, the law makes it unlawful for an employer to retaliate against the employee who has opposed any practice made unlawful by these statutes.[2]

Where the case involves allegations of "disparate treatment," as in this case, the plaintiff "must show discriminatory intent and may establish a *prima facie* case by a showing of the factors outlined in *McDonnell Douglas*." *Lee v. Conecuh County Bd. of Educ.*, 634 F.2d 959, 962 n.3 (11th Cir. 1981). Pursuant to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), a plaintiff alleging race discrimination will establish his *prima facie* case by showing: i) that he is a member of a protected class defined by race or age; ii) that he was subjected to an adverse job action; iii) that a similarly-situated employee outside his protected class was treated more favorably; and iv) that he was qualified to perform his job. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). A plaintiff alleging retaliation will establish his *prima facie* case by showing: i) that he engaged in protected activity; ii) that he suffered an adverse job action; and iii) that there was a causal connection between the two. *See, e.g., Bass v. Bd. of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1117 (11th Cir. 2001) (collecting cases).

---

[2] The three statutes involve substantially similar provisions, and will thus be analyzed together. *See, e.g., Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1562 n.14 (11th Cir. 1987) (Title VII and ADEA cases are analyzed together "because Title VII and ADEA share as a common purpose the elimination of employment discrimination and because the method for proving discriminatory treatment under both acts is similar"); *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998) (FCRA and Title VII are analyzed together "because the Florida act was patterned after Title VII").

*Case No.: 3:07-cv-371-RV-MD*

After the plaintiff establishes his *prima facie* case, the burden shifts to the defendant to rebut the inference of discrimination or retaliation by presenting a legitimate and non-discriminatory reason for its employment action. *McDonnell Douglas*, *supra*, 411 U.S. at 802. This intermediate burden is "exceedingly light," *see Holifield, supra*, 115 F.3d at 1564 (citation omitted), and once it has been satisfied the plaintiff must demonstrate that the articulated reason was a mere pretext. *See Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000).

### III. Discussion

The defendant contends that the plaintiff has not established his *prima facie* case for discrimination and retaliation. Even if he has made such a showing, the defendant contends that the plaintiff cannot show that the stated reason for his discharge was pretextual. For purposes of this order, I will assume *arguendo* that plaintiff has established a *prima facie* case, and that defendant has discharged its "exceedingly light" intermediate burden. I will thus proceed to consider the pretext issue.

The stated reason for the plaintiff's termination was his string of job-related mistakes and work rule violations. In order to show pretext in such a situation, the plaintiff "must show either that he did not violate the work rule or that, if he did, other employees not within the protected class who engaged in similar acts were not similarly treated." *Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir. 1982); *see also Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1363 (11th Cir. 1999). The plaintiff does not dispute that he repeatedly violated work rules. Consequently, the question is whether he has evidence that employees not within his race and age classification engaged in similar acts, but were treated better, or whether there is evidence of a racial or age discriminatory application of the work rules. In analyzing whether a plaintiff has shown pretext in this context, the Eleventh Circuit has stated:

*Case No.: 3:07-cv-371-RV-MD*

> To determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. A comparator is an employee similarly situated to the plaintiff in all relevant respects. The quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. Misconduct merely "similar" to the misconduct of the disciplined plaintiff is insufficient.

*Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1280 (11th Cir. 2008) (citations, quotation marks, and brackets omitted).

As previously noted, the plaintiff committed five (5) serious errors during an eighteen (18) month period, and these infractions resulted in four (4) suspensions. John Arthur, manager for the Pensacola plant, has submitted an affidavit stating that no other employee had that many suspensions over that period of time and was not terminated. The plaintiff has not produced any evidence in the record to dispute this statement. Thus, he has failed to identify an employee outside his protected class who was involved in or accused of "nearly identical" misconduct and was treated better.

The plaintiff impliedly recognizes that he has no comparator evidence. He claims, however, that his unequaled disciplinary record actually helps prove his case. He suggests that "the central issue" and "the heart of [his] claims" is that black employees were disciplined more frequently and more severely than white employees. In other words, no white employee had a similar disciplinary record because white employees were given preferential treatment. But, for this claim, he relies almost entirely on conclusory or unspecific statements from black employees who have stated that white employees were treated better. This is insufficient to avoid summary judgment. *See, e.g., Hill v. Oil Dri Corp. of Georgia,* 198 Fed. Appx. 852, 858 (11th Cir. 2006) (plaintiff must advance "specific facts" to defeat summary judgment and a "vague and conclusory" claims of discrimination will not

*Case No.: 3:07-cv-371-RV-MD*

suffice).

In contrast to the plaintiff's submission, the defendant has evidence in the record (in affidavit and spreadsheet form) describing the discipline administered to operators in the Pensacola plant from 2004 through 2006. Over that two-year period, there were 24 suspensions in total: 14 were given to white employees, while only 10 were given to black employees. Further, 23 of the 24 suspensions were given to employees 40 years old or younger. During this same time period, 6 black employees were terminated for poor job performance, and 5 white/non-black employees were terminated for the same performance-related reasons. 8 out of the 11 individuals discharged were younger than the plaintiff. These statistics are very revealing, and negate any claim of discriminatory application of the defendant's work rules. In short, the plaintiff's claims are simply not supported by the record.

## IV. Conclusion

For these reasons, the defendant's motion for summary judgment (doc. 39) must be, and is, GRANTED. The clerk shall enter judgment for the defendant, together with taxable costs.

**DONE and ORDERED this 30th day of March, 2009.**

/s/ *Roger Vinson*
**ROGER VINSON
Senior United States District Judge**

*Case No.: 3:07-cv-371-RV-MD*